# EXHIBIT "1"

**MASTER EQUIPMENT FINANCING AGREEMENT**
MASTER AGREEMENT NO. 3001396

| FULL LEGAL NAME and BILLING ADDRESS OF "DEBTOR" | FULL LEGAL NAME AND ADDRESS OF "SECURED PARTY" |
|---|---|
| Michael Olkovsky, D.D.S., LLC<br>3 Cypress Trail<br>Farmington, CT 06032 | Matsco a division of Greater Bay Bank N.A.<br>2000 Powell St Fl 4<br>Emeryville, CA 94608<br>Phone: (800) 326-0376    Fax: (800) 318-8601 |

For and in consideration of the mutual covenants and promises hereinafter set forth, Debtor and Secured Party enter into this Master Equipment Financing Agreement ("this Agreement") as of August 19, 2004 and agree as follows:

1. **EQUIPMENT; SECURITY INTEREST.** The provisions of this Agreement cover all items of machinery, equipment, and other property (collectively the "Equipment" and individually an "Item" or "Item of Equipment") which are described in any Schedule to Master Equipment Financing Agreement now or hereafter executed by the parties hereto and made a part hereof (collectively the "Schedules" and individually a "Schedule"). Debtor hereby grants Secured Party a security interest in and to all Debtor's right, title and interest in and to the Equipment and all proceeds thereof, such grant with respect to each Item to be as of Debtor's execution of a Schedule applicable to said Item, or if Debtor then has no interest in such Item, as of such subsequent time as Debtor acquires an interest in the Item. Debtor grants such security interest to secure Debtor's performance of Debtor's obligations to Secured Party under, arising from or connected with this Agreement, the Schedules, and any other present or future agreement with Secured Party, whether now existing or hereafter arising, and all amendments, extensions or renewals hereof or thereof, whether now existing or hereafter arising, voluntary or involuntary, whether or not jointly owed with others, direct or indirect, absolute or contingent, liquidated or unliquidated, and whether or not from time to time decreased or extinguished and later increased, created or incurred. Debtor shall ensure that such security interest is and shall remain a sole and valid first priority security interest (subject only to the lien of current taxes and assessments not in default but only if such taxes are entitled to priority as a matter of law).

2. **PAYMENTS.** Debtor shall repay Secured Party the Total Advance referenced in any Schedule with interest, in the number of monthly payments of the amount indicated in the Schedules (plus the prorated interim interest described in the next sentence of this Section 2) at the office of Secured Party listed in this Agreement. An interim interest charge, based on said Total Advance reference in any Schedule, for the period from the Secured Party's execution of any Schedule (the "Commencement Date") until the Initial Payment Date in such Schedule shall also be due and payable on the Initial Payment Date in such Schedule along with the initial regular monthly payment as specified in such Schedule. The initial monthly payment shall be deemed due as of the date indicated in the applicable Schedule, and subsequent monthly payments shall be due on the same day of each month thereafter until all are paid. All other amounts due hereunder or under any Schedule (except for the amount required with this Agreement or with any Schedule) shall be due on Debtor's receipt of Secured Party's invoice therefor. Advance payments shall be applied to the last monthly payments in reverse order until exhausted; provided that, if there is a default, any payments under this Agreement or any Schedule may be applied to Debtor's obligations to Secured Party in such order as Secured Party chooses; and provided further that IF DEBTOR HAS PAID ADVANCE PAYMENTS AS REFERENCED IN ANY SCHEDULE PRIOR TO THE INITIAL PAYMENT DATE THEREOF, BUT FAILS FOR ANY REASON NOT THE FAULT OF SECURED PARTY TO COMPLETE AND PROCEED IN ANY WAY WITH THE TRANSACTION WHICH IS THE SUBJECT HEREOF OR THEREOF, THEN, IN ADDITION TO ANY OTHER RIGHTS OR REMEDIES SECURED PARTY MAY HAVE, SECURED PARTY MAY RETAIN ALL OF SUCH ADVANCE PAYMENTS, IT BEING ACKNOWLEDGED BY DEBTOR THAT THE AMOUNT OF SAME REASONABLY APPROXIMATES SECURED PARTY'S COSTS AND EXPENSES IN PREPARING FOR AND DOCUMENTING THE SUBJECT TRANSACTION AND IS FAR LESS THAN SECURED PARTY'S EXPECTED PROFIT FROM THE SUBJECT TRANSACTION. Except as expressly provided in Section 23 below, Debtor shall not have any right to pay any sum due to Secured Party hereunder or under any Schedule prior to the time that such sum is due and payable as provided in this Agreement or such Schedule, unless Debtor shall have received Secured Party's prior written consent to such prepayment, which consent is at Secured Party's absolute discretion.

3. **NON-CANCELABLE AGREEMENT; NO OFFSET.** NEITHER THIS AGREEMENT NOR ANY SCHEDULE MAY BE CANCELED OR TERMINATED BY DEBTOR FOR ANY REASON WHATSOEVER. DEBTOR SHALL NOT BE ENTITLED TO ANY ABATEMENT OF ANY PAYMENT DUE HEREUNDER OR UNDER ANY SCHEDULE, NOR TO ANY DEFENSE, REDUCTION, OFFSET, COUNTERCLAIM, RECOUPMENT, DEDUCTION, DEFERMENT, OR INTERRUPTION THEREOF UNDER ANY CIRCUMSTANCES OR FOR ANY REASON WHATSOEVER. DEBTOR HEREBY WAIVES ANY AND ALL EXISTING AND FUTURE CLAIMS, AS OFFSETS, AGAINST ANY PAYMENTS DUE HEREUNDER OR UNDER ANY SCHEDULE, AND AGREES TO PAY ALL SUCH AMOUNTS AS AND WHEN DUE, REGARDLESS OF ANY OFFSET OR CLAIM THAT MAY BE ASSERTED BY DEBTOR OR ON ITS BEHALF.

4. **FINANCING AGREEMENT; NO WARRANTIES.** THIS AGREEMENT IS SOLELY A FINANCING AGREEMENT. SECURED PARTY HAS HAD NO INVOLVEMENT IN THE SELECTION OR PURCHASE OF ANY ITEM OF EQUIPMENT. DEBTOR ALONE HAS OR WILL HAVE SELECTED AND ACQUIRED ALL OF THE EQUIPMENT FOR DEBTOR'S PURPOSES. SECURED PARTY IS NOT A SELLER UNDER THE UCC OF ANY ITEM OF EQUIPMENT, AND MAKES NO WARRANTIES OF ANY NATURE, INCLUDING WITHOUT LIMITATION WARRANTIES AS TO THE MERCHANTABILITY OF ANY ITEM OF EQUIPMENT, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS INSTALLATION, SIZE, DESIGN, CAPACITY, CONDITION, QUALITY, COMPLIANCE WITH ANY LAW, RULE, SPECIFICATION OR CONTRACT, LATENT DEFECTS, OR WHETHER IT OR ITS INSTALLATION OR USE WILL INFRINGE THE RIGHTS OF ANY PERSON. NO DEFECT OR UNFITNESS OF OR ANY OTHER PROBLEM RELATED TO ANY ITEM OF EQUIPMENT SHALL RELIEVE DEBTOR OF ANY OBLIGATION UNDER THIS AGREEMENT OR ANY SCHEDULE. SECURED PARTY SHALL NOT BE LIABLE OR RESPONSIBLE FOR, AND DEBTOR SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS SECURED PARTY FROM AND AGAINST, ANY LOST PROFITS OR ANY DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGE TO, OR LOSS OR EXPENSE RESULTING FROM, THE PURCHASE, DELIVERY, INSTALLATION, OPERATION, OR USE (OR ANY FAILURE OR DELAY CONCERNING ANY OF THE FOREGOING) OF ANY ITEM OF EQUIPMENT OR ANY PRODUCT MANUFACTURED BY OR WITH THE USE OF ANY ITEM OF EQUIPMENT.

Debtor shall not make any claims or assert any defenses against Secured Party or its assignees arising from the condition of any Equipment, or the use or intended use of any Equipment, including without limitation any claims for lost profits or consequential damages. Debtor has not relied and will not rely on any statements or warranties made by Secured Party or any of its representatives. Debtor, at its expense, will pay all transportation, packing, installation, testing, and other charges relating to delivery, installation and use of all Equipment.

5. **NO AGENCY.** DEBTOR ACKNOWLEDGES THAT NO MANUFACTURER OR SUPPLIER OF ANY ITEM, NOR ANY FINANCIAL INTERMEDIARY, NOR ANY AGENT OF ANY OF THEM IS AN AGENT OF SECURED PARTY. SECURED PARTY IS NOT BOUND BY ANY

REPRESENTATION OF ANY SUCH PARTY, NOR SHALL ANY SUCH REPRESENTATION HAVE ANY EFFECT ON DEBTOR'S OBLIGATIONS HEREUNDER OR UNDER ANY SCHEDULE.

6. **LOCATION; INSPECTION.** Debtor shall keep the Equipment in Debtor's possession and control at the location specified in the applicable Schedule, and the Equipment shall not be removed therefrom, without Secured Party's prior written consent. Secured Party shall be entitled to enter such premises and inspect the Equipment at any time. Whenever requested by Secured Party, Debtor shall forthwith advise Secured Party of the exact location of any Item.

7. **USE; MAINTENANCE.** The Equipment shall only be used for commercial and business purposes, carefully, properly and in compliance with all applicable legal requirements, all conditions and requirements of all insurance policies required to be carried by Debtor under this Agreement, and all manufacturer's instructions and warranty requirements. Debtor shall maintain the Equipment at all times in good repair, condition and working order. Debtor shall also cause each Item, for which a service contract is generally available, to be covered by such a contract which provides coverages typical as to property of the type involved and is issued by a competent servicing entity reasonably approved by Secured Party.

8. **ALTERATIONS; SECURITY INTEREST COVERAGE.** Without Secured Party's prior written consent, Debtor shall not make any alterations or additions to any Item that detract from its economic value or functional utility, except as may be required to comply with Section 7 above. Secured Party's security interest hereunder includes all modifications, accessions, additions to, and replacements and substitutions for any Item. Debtor shall not make any replacements or substitutions without Secured Party's prior written consent.

9. **LOSS AND DAMAGE; CASUALTY VALUE.** In the event of loss, theft, destruction, damage, condemnation, seizure, or other taking of or to an Item, from any cause ("Loss"), Debtor shall notify Secured Party thereof within seven days of such Loss, and shall immediately place such Item in good repair, condition and working order; provided, however, that if Secured Party determines such Item is lost, stolen, destroyed, or damaged beyond repair, or is requisitioned, or suffers a constructive total loss under any insurance policy carried hereunder, Debtor, at Secured Party's option and upon its demand, shall either (a) replace such Item with like equipment in good repair, condition and working order (whereupon such replacement equipment will be deemed such Item for all purposes hereof, or (b) pay Secured Party the "Casualty Value" of such Item, which shall equal (i) any amounts due from Debtor with respect to such Item at the time of such payment, and (ii) each future payment due with respect to such Item discounted at 5% per annum simple interest from the date due to the date of such payment.

10. **TITLING.** If requested by Secured Party, Debtor shall cause an Item subject to title registration laws to be titled as directed by Secured Party. Debtor shall advise Secured Party promptly as to any necessary retitling. Debtor shall deliver all documents of title to Secured Party within 60 days of any titling. In no event, shall Secured Party have any responsibility to Debtor for any delay or other problem with respect to title registration.

11. **TAXES.** Debtor shall make all filings as to, and pay when due, all taxes, fees (including registrations), fines, penalties, and other governmental assessments based on ownership or use of the Equipment, and shall pay as directed by Secured Party or reimburse Secured Party for other governmental assessments (including gross receipts taxes but excluding federal and state taxes based solely on Secured Party's net income) related to amounts due hereunder or under the Schedules, the Equipment, or otherwise related to this Agreement or the Schedules. Filings concerning such other assessments shall, at Secured Party's option, be made by Secured Party or by Debtor, as directed by Secured Party.

12. **INSURANCE.** Debtor shall purchase and continuously maintain all-risk insurance against loss of or damage to the Equipment for not less than the full replacement value thereof, naming Secured Party as Loss Payee and additional insured. Such insurance shall include coverages and be in a form and with companies approved by Secured Party, shall provide at least thirty (30) days advance written notice to Secured Party of cancellation or any change therein, and shall provide that all coverages are "primary." Debtor shall provide Secured Party with an original policy or certificate evidencing such insurance. If Secured Party assigns this Agreement (or any Schedule) and Debtor has notice of such assignment, Debtor shall cause such insurance to provide the same protection to the assignee as its interests may appear. The proceeds of such insurance, at Secured Party's option, shall be applied toward (a) repair or replacement of the appropriate Item or Items of Equipment, (b) payment of the Casualty Value thereof, or (c) payment of any other accrued obligations of Debtor hereunder or under the Schedules. Debtor shall also maintain public liability and property damage insurance having limits in such amounts and forms satisfactory to Secured Party as Secured Party shall request. If Debtor does not purchase and maintain any such insurance referenced in this section 12, Secured Party shall have the right, but shall not be obligated, to purchase such insurance and to pay the premiums for same, in which event Debtor shall pay to Secured Party on demand, as additional rent, an amount equal to all amounts paid or expenses incurred by Secured Party, with interest.

13. **SECURED PARTY'S PAYMENT; POWER OF ATTORNEY.** If Debtor fails to perform any of its obligations hereunder, Secured Party may, at its option (but without any obligation to do so and without any liability to any person or entity for doing or not doing so) perform such obligations, and Debtor shall reimburse Secured Party on demand the cost of such performance. Debtor irrevocably appoints Secured Party as Debtor's attorney-in-fact to do (but Secured Party shall not be obligated to do and shall incur no liability to any person or entity for failure to do) any act that Debtor is obligated to do, and to exercise any and all rights and powers as Debtor might exercise with respect to the Equipment. Debtor shall reimburse Secured Party on demand for any costs, including without limitation attorneys' fees, Secured Party may incur while acting under this Section 13, together with interest thereon at the rate of 18% per annum or, if lower, the maximum rate allowable by law, from the date paid by Secured Party. Such care as Secured Party gives to safekeeping its own property of like kind shall constitute reasonable care of any Item when in Secured Party's possession. However, Secured Party shall not be required to make any presentment, demand or protest or give any notice and need not take any action to preserve any rights against any prior party or any other person relating to the obligations secured hereby or to any Item.

14. **INDEMNITY.** Debtor shall indemnify, defend and hold Secured Party harmless from and against any claim, action, liability, or expense, including without limitation attorneys' fees, incurred by Secured Party related to this Agreement or any Schedule. While it is not anticipated that Secured Party shall have any liability for torts related to the Equipment, this indemnity covers tort liability and proceedings including any strict liability claim, any claim under another theory related to latent or other defects, and patent, trademark or service mark infringement claims.

15. **DEBTOR'S REPRESENTATIONS AND WARRANTIES.** Debtor hereby represents, warrants and agrees as follows: (a) Debtor is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, is duly qualified and in good standing to conduct business in all jurisdictions in which any Item may be located and has the power and authority to carry on its business as presently conducted and to enter into and perform its obligations under this Agreement and the Schedules; (b) this Agreement and each Schedule have been duly authorized by Debtor and upon execution by Debtor shall constitute the legal, valid and binding obligations of Debtor enforceable against Debtor in accordance with their terms; (c) each Item shall, at the time creditor funds the applicable Total Advance referenced in any Schedule, be owned by Debtor free and clear of any and all liens, claims, security interests, and other encumbrances, and shall be in good repair, condition and working order; (d) the financial and other information which Debtor has submitted, or will submit, to Secured Party in connection with this Agreement is, or shall be at time

of submission, true and complete; (e) since the date of the most recent of such financial statements and information, there has not been any material adverse change in the business, financial, or other condition of, or the prospects or projections of Debtor, the industry in which it operates, or the collateral which would be subject to the security interest granted to Secured Party, if any; (f) no part of the Equipment is or shall be necessary for the support of Debtor or Debtor's family, if any; and (g) this Agreement and all Schedules are entered into for Debtor's business and commercial purposes. Each person executing this Agreement or any Schedule on Debtor's behalf warrants his/her due authority to do so.

16. **DEFAULT.** Any of the following shall constitute a "default" by Debtor hereunder: (a) if Debtor shall default in payment or performance when due of any obligation of Debtor to Secured Party arising independently of this Agreement; (b) if Debtor fails to pay any amount under this Agreement or any Schedule on the due date; (c) if Debtor fails to perform its obligations pursuant to Addendum No 1 (as applicable) to this Agreement (d) if Debtor fails to perform any other obligation hereunder, or any Schedule, and such failure continues for 10 days from Secured Party's verbal or written notice thereof; e) if Debtor defaults under the provisions of Debtor's office premises lease or other occupancy agreement; (f) if Debtor ceases doing business as a going concern; (g) if Debtor becomes insolvent or makes an assignment for the benefit of creditors; (h) if a petition is filed by or against Debtor under the Bankruptcy Code; (i) if Debtor applies for or consents to the appointment of a receiver, trustee, conservator, or liquidator of Debtor, or any of same is appointed without the application or consent of Debtor; (j) if any statement, representation or warranty heretofore or hereafter furnished by Debtor shall be untrue or unperformed in any material respect; (k) If any person or entity attaches any assets or levies execution against Debtor and the attachment or levy is not released within 48 hours; (l) if Debtor makes a bulk transfer of its furniture, fixtures, equipment, or other assets; (m) if Debtor breaches any term of any loan or credit agreement, or defaults thereunder, or if the condition of Debtor's affairs shall so change as to, in Secured Party's opinion, increase the credit risk concerning this Agreement or any Schedule; or (n) if any guarantor dies or any event described above occurs with respect to any guarantor; or (o) Debtor files any unauthorized financing statement. Debtor shall forthwith notify Secured Party of the occurrence of any default specified herein.

17. **REMEDIES.** On any default by Debtor, Secured Party shall have the rights, options, duties, and remedies of a Secured Party under the UCC and, without limiting the foregoing, Secured Party may exercise at any time or from time to time any one or more of the following remedies, without notice to or demand on Debtor (unless otherwise specified herein): (a) declare all payments required by this Agreement and all Schedules immediately due and payable and recover same; (b) declare the Casualty Value or such lesser amount as may be required by law immediately due and payable with respect to any or all Items of Equipment and recover same; (c) sue from time to time for and recover all payments then accrued hereunder and under any Schedule, and which accrue during the pendency of such action; (d) apply any or all Advance Payments referenced in any Schedule to any obligation of Debtor to Secured Party; (e) enter onto property by whatever means shall be reasonably necessary where any Equipment is located and take possession of and, if deemed appropriate, render unusable any or all Items of Equipment, wherever same may be located, without any process of law and without liability for any damages occasioned by such taking of possession, and remove, keep and store the same until sold or otherwise disposed of; (f) require Debtor to assemble any or all Items of Equipment at a location in reasonable proximity to the designated location hereunder; (g) upon minimum notice to Debtor, as may be required by the UCC, lease, sell or otherwise dispose of any Item of Equipment, whether or not in Secured Party's possession, at one or more public or private sales at any place or places designated by Secured Party, on such terms and in such manner as Secured Party may determine, and apply the net proceeds of such sale, after deducting all costs of such sale (including without limitation costs of transportation, repossession, storage, refurbishing, advertising, and brokers' fees), to the obligations of Debtor hereunder or under the applicable Schedule, with Debtor remaining liable for any deficiency and with any excess being returned to Debtor.

Any sale may be adjourned by announcement at the time and place appointed for such sale, or for any such adjourned sale, without further published or other notice, and Secured Party may bid and become the purchaser at any such sale.

Debtor waives any right to a judicial hearing prior to the time Secured Party takes possession or disposes of Equipment on Debtor's default, whether or not such taking of possession or disposition involves a judicial action. All of Secured Party's rights, powers and remedies are cumulative and may be exercised successively or concurrently without impairing Secured Party's security interest.

In addition to the foregoing, Debtor agrees that until all obligations hereunder have been paid in full, Debtor shall not, directly or indirectly (i) hire or induce any party to recruit or hire any person who is an employee or independent contractor of the practice described on any Schedule (the "Practice"); (ii) whether for itself or any other person or entity, call upon, solicit, divert or take away any customers, business or clients of the Practice (including, without limitation, any third-party payors); (ii) solicit or induce any party to solicit, any contractors of the Practice to enter into the same or a similar type of contract with any other party; or (iv) disrupt, damage, impair or interfere with the business of the Practice.

Any forbearance or failure to act or delay by Secured Party in exercising any right, power or remedy shall not preclude the further exercise thereof, and every right, power or remedy of Secured Party shall continue in full force and effect until such right, power or remedy is specifically waived in a writing executed by Secured Party. Debtor waives any right to require Secured Party to proceed against any person or to exhaust any collateral or to pursue any remedy in Secured Party's power. Debtor agrees that Secured Party may exercise its rights of setoff with respect to obligations secured hereby in the same manner as if such obligations were unsecured.

18. **SECURED PARTY'S EXPENSES.** Debtor shall pay Secured Party for all costs and expenses, including without limitation attorneys' fees and court costs and sales costs not offset against proceeds under Section 17 above, incurred by Secured Party in enforcing this Agreement or any Schedule, regardless of whether or not a legal action is filed and whether such an action is dismissed.

19. **ASSIGNMENT.** Without the prior written consent of Secured Party (in its absolute discretion), Debtor shall not sell, assign, transfer, lease, pledge, hypothecate, otherwise encumber or dispose of, voluntarily or involuntarily, by operation of law or otherwise, this Agreement, any Schedule, or any right hereunder or thereunder, or interest herein or therein, or any interest in any Item. Without notice to Debtor, Secured Party (in its absolute discretion) may sell, assign, transfer, pledge, encumber, or otherwise dispose of this Agreement, or any Schedule, or any of its rights or interests herein or therein, or any of its interests in any Item. If Secured Party gives Debtor notice of any such assignment, Debtor shall acknowledge receipt thereof in writing in a form requested by Secured Party, and shall thereafter pay any amounts due hereunder as directed in the notice. Debtor shall recognize such assignments and/or security agreements, and shall not assert against the assignees and/or secured parties any defense, claim or set-off that Debtor may have against Secured Party. Subject to the foregoing, this Agreement and the Schedules inure to the benefit of, and are binding upon the respective heirs, legatees, personal representatives, successors, and assigns of the parties.

20. **MARKINGS; PERSONAL PROPERTY.** Debtor shall affix and keep all labels furnished by Secured Party in a prominent place on each Item. The Equipment is, and shall always remain, personal property regardless of how any Item may be attached to real property. Debtor shall obtain and deliver to Secured Party waivers of interest or liens in recordable form satisfactory to Secured Party from all persons and entities claiming any interest in the real property on which an Item is or is to be located.


21.  **CHARGES.** IF DEBTOR FAILS TO PAY ANY AMOUNT TO BE PAID HEREUNDER OR ANY SCHEDULE WITHIN TEN (10) DAYS OF THE DUE DATE, DEBTOR SHALL PAY SECURED PARTY (a) A SERVICE CHARGE OF TEN PERCENT (10%) OF SUCH UNPAID AMOUNT, (b) ALL AMOUNTS SECURED PARTY PAYS OTHERS IN CONNECTION WITH COLLECTION OF SUCH PAYMENTS, AND (c) INTEREST ON BOTH OF THE FOREGOING FROM THE DUE OR INCURRED DATE UNTIL PAID AT THE LESSER OF EIGHTEEN PERCENT (18%) PER ANNUM OR THE HIGHEST RATE PERMITTED BY LAW. Debtor shall pay Secured Party, upon demand, a $25.00 fee when any payment is dishonored or returned unpaid.

22.  **ADDITIONAL DOCUMENTS.** Debtor shall, at its expense, promptly procure, execute and deliver to Secured Party, all such further documents and assurances, and take such further action, as Secured Party may from time to time request, including without limitation financing statements. Debtor hereby irrevocably constitutes and appoints Secured Party (and Secured Party's assignee and agents), with the full power of substitution and resubstitution as Debtor's true and lawful agent and attorney-in-fact to do the following (but Secured Party shall not be obligated to do and shall incur no liability for failure to do the following): execute, file and/or record all UCC or other Commercial Code documents, including without limitation all financing statements. Debtor agrees to furnish promptly to Secured Party (a) financial statements (b) any other information Debtor ordinarily provides to the public, and (c) such other information and documents not specifically mentioned herein relating to this Agreement or any Schedule, as Secured Party may request from time to time. Debtor shall pay as directed (or reimburse) Secured Party for all filing, search, legal, and other expenses relating to any documents concerning this Agreement or any Schedule.

23.  **MISCELLANEOUS.** Except as otherwise stated in this Agreement, all notices and other communications required or permitted hereunder or any Schedule, shall be in writing and shall be deemed duly given and received when delivered personally or transmitted by facsimile transmission, or upon mailing by first class mail, postage prepaid, properly addressed to Secured Party or Debtor, as the case may be, at its address set forth above, or at such other address as either party may designate by notice to the other. This Agreement and each Schedule shall be deemed to have been entered into at the offices of the Secured Party in Alameda County, California, where this Agreement and each Schedule are being signed on behalf of Secured Party, and all performance on the part of Debtor shall be deemed to have been required to be performed by Debtor at said offices of Secured Party. Debtor agrees that jurisdiction and venue in any action or proceeding concerning this Agreement or any Schedule shall be in the proper state or federal court located in Alameda County, California, or in the proper federal court located in San Francisco, California, or in an appropriate court in another jurisdiction selected by Secured Party, which has jurisdiction over the parties. This Agreement shall be governed by and interpreted in accordance with the law of the State of California.

Debtor shall not incur additional practice-related indebtedness in excess of $25,000 in any calendar year without the express written consent of Secured Party. Debtor may prepay this Agreement, after making at least 12 monthly payments, by paying an amount which is equal to the sum of the remaining unbilled and unpaid monthly payments of each Schedule, discounted at the interest rate of that Schedule, of all Schedules under the Agreement plus all billed and unpaid monthly payments plus any applicable late charges, interest, expenses and taxes ("Prepayment Balance") as quoted by Secured Party, plus a fee equal to the sum of the Total Advances of all Schedules under this Agreement ("Fee") multiplied by 3% if exercised in months 13-24; the Fee multiplied by 2% in months 25-36; the Fee multiplied by 1% in months 37 - 48, and the Fee multiplied by 0% after month 48.

Secured Party's books and records showing the account between the parties shall be admissible and binding on Debtor in any legal action or other proceeding in establishing the items stated therein. If there is more than one Debtor named in this Agreement, the liability of each shall be joint and several. Time is of the essence of this Agreement and each Schedule. This Agreement together with the Schedules constitute the entire agreement between Secured Party and Debtor and supersede all prior or contemporaneous agreements, understandings, negotiations and communications regarding the subject matter hereof. Neither this Agreement nor any Schedule may be amended, altered or changed except by a written agreement signed by Secured Party and Debtor. No provision of this Agreement or of any Schedule (or part thereof) which may be deemed unenforceable shall in any way invalidate any other provision (or parts), all of which shall remain in full force and effect. No provision hereof for Secured Party's benefit, and no default of Debtor hereunder or under any Schedule, may be waived except in writing signed by Secured Party. No failure by Secured Party to exercise any right or remedy shall operate as a waiver thereof. Waiver by Secured Party of any provision or default in any instance shall not constitute a waiver as to any other provision or default in any other instance.

DEBTOR ACKNOWLEDGES HAVING READ AND UNDERSTOOD ALL TERMS AND CONDITIONS OF THIS AGREEMENT INCLUDING THOSE ON PAGES 1-4 HEREOF.

**SECURED PARTY:**
Matsco a division of Greater Bay Bank N.A.

By: _[signature]_

Title: _Funding Control Officer_
Patricia Ting

Patricia Ting
*Funding Control Officer*

**DEBTOR:**
Michael Olkovsky, D.D.S., LLC

By: _[signature]_
Michael Olkovsky

Title: Member